# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* C.A.

No. 17-1100 (Cabell County 16-JA-66)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.A., by counsel Kerry A. Nessel, appeals the Circuit Court of Cabell County's November 20, 2017, order terminating his parental rights to C.A.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sarah Dixon, filed a response on behalf of the child in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a petition in March of 2016 alleging that petitioner and his wife participated in domestic violence in the home and failed to protect the child, C.A. Later that month, petitioner waived his preliminary hearing. Subsequently, the proceedings against petitioner were delayed due, in part, to his absence at court hearings and his request for new counsel. During this time, petitioner tested positive for marijuana and exhibited signs of psychological problems.

In July of 2016, the circuit court held an adjudicatory hearing and petitioner stipulated to the allegations in the petition. The circuit court also noted that the mother's testimony was preserved from an earlier hearing. The mother testified that the most recent incident of domestic violence occurred when petitioner was drunk. She testified that she and petitioner had a physical altercation during which petitioner struck her several times. The mother testified that she had a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

black-eye as a result of the altercation. The mother stated that she was afraid of petitioner and obtained a domestic violence protective order against him. Based upon petitioner's stipulation and the testimony of the mother, the circuit court adjudicated petitioner as an abusing parent. Petitioner moved for a post-adjudicatory improvement period and the circuit court granted his motion. The circuit court ordered petitioner to participate in drug screening and a psychological examination. Further, petitioner's family case plan required that he participate in a domestic violence intervention program, parenting services, individual therapy, and visitation with the child.

The circuit court held a review hearing for the mother in August of 2016 and noted that petitioner was incarcerated after he allegedly made terroristic threats against the mother and the circuit court judge; that judge recused himself after receiving those threats. The mother's case was dismissed.

In March of 2017, the circuit court reviewed petitioner's improvement period and the guardian moved to terminate his improvement period for noncompliance. Petitioner then moved for the second judge to be recused. A third judge was assigned the case on May 15, 2017. Petitioner also moved for new counsel, and new counsel was appointed.

The circuit court held a dispositional hearing in July of 2017 and heard testimony from a DHHR worker and petitioner. The DHHR worker testified that petitioner did not comply with drug screening, substance abuse treatment, or visitation with the child. She also testified that petitioner completed a three-hour domestic violence class, but she believed petitioner's anger management required further counseling. The DHHR worker testified that petitioner moved to Ohio, which made setting up services more difficult. Petitioner testified that he had visited the child twice since the beginning of the case, but never in a supervised setting. Petitioner also testified that he did not believe he had a drug problem and therefore he would not participate in substance abuse treatment. Petitioner further testified that he was enrolled in parenting classes in Ohio, but he did not introduce documents in support of that claim.

Ultimately, the circuit court found that the petitioner failed to comply with the family case plan. Specifically, petitioner failed to undergo drug screens, complete drug treatment, complete his anger management classes, and visit with the child. The circuit court then found that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future and that the termination of parental rights was necessary for the child's welfare. Accordingly, the circuit court terminated petitioner's parental rights in its November 20, 2017 order.[2] Petitioner now appeals that order.

The Court has previously established the following standard of review:

---

[2]The mother retains her parental rights after successfully completing an improvement period and the circuit court's dismissal of the petition against her. The permanency plan for the child is continuation in her mother's care.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court clearly erred in terminating his parental rights. Petitioner asserts that he made corrections to his parenting that the circuit court ignored when considering its ultimate disposition. We disagree. West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." Further, West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the parent has "not responded or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" Upon these findings, the circuit court may terminate a parent's parental rights without the use of less-restrictive alternatives. Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

The circuit court correctly found that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future because petitioner was non-compliant with a reasonable family case plan. Although petitioner's improvement period was never formally extended, petitioner was offered services for over a year and never consistently participated in the agreed-upon family case plan. Contrary to that case plan, petitioner took only two drug screens, never participated in substance abuse treatment, did not visit his daughter on a consistent basis, and did not attend sufficient anger management classes. The record is clear that the DHHR required participation in these services to correct the conditions of neglect and petitioner agreed to those services. Nevertheless, at the dispositional hearing, petitioner asserted that he did not have a drug problem, even though the record clearly indicates that petitioner tested positive for controlled substances before his improvement period began. Petitioner further asserted that he was participating in some services out of state. However, he admitted no evidence regarding those services. Because petitioner was noncompliant for the duration of his improvement period, we find no error in the circuit court's finding that there was no reasonable likelihood that the conditions of neglect or abuse could be corrected in the near future.

The circuit court also correctly found that termination was necessary for the welfare of the child because petitioner exhibited violent tendencies throughout the proceedings. Petitioner admitted to domestic violence in the home in the presence of the child. Further, the record indicates that petitioner made terroristic threats against one of the circuit court judges assigned to his case and the mother during the proceedings. Petitioner never provided any evidence that he sought help for these outbursts, with the exception of one three-hour-long class on domestic violence. Additionally, petitioner did not visit with the child in a supervised setting and, therefore, could not show that such outbursts would not affect his parenting. Because petitioner could not show that he had remedied his serious violent tendencies, the circuit court could not guarantee the child's safety if she were to be in his custody. We have previously held:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt.4. Therefore, we find that the circuit court correctly found that termination was necessary for the welfare of the child. Accordingly, we find that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker